*Cuvillier* for the plaintiff, *Trubuc* for the defendant.

---

## ROBERTSON vs. NOTT.

An agent is a competent witness.

Parole evidence is admissible to prove an agreement between the parties that a bill of exchange, which had been given by one of them to the other should not be negociated.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. This action is brought to recover damages, which the plaintiff alleges. he has sustained by reason of the defendant having negociated a bill of exchange, contrary to an engagement entered into by him at the time he received it.

The general issue is pleaded.

At the trial the plaintiff offered as a witness the agent through whom the negociation was carried on, in order to prove the circumstances of the transaction. He was objected to as incompetent, as he could not be permitted to explain or contradict a contract which it was contende had been reduced to writing.

The first ground has been abandoned before this court, and very properly, as there cannot be a doubt that persons standing in the relation of the witness, are competent to give evidence between their principal, and those with whom he has had business, even though that business should have been transacted by the witness in his capacity of agent.

In support of the other ground, we have been referred principally to that clause in our code which provides that parol evidence shall not be received beyond or against the contents of a written act, and that nothing which was said before, at the time or since the passing of the instrument, can be received to alter or explain it his provision of our law does not appear to us applicable to a case such as that now presented for decision. The code contains an express exception that takes it out of

East'n District.
*Feb.* 1824.

ROBERTSON
*vs.*
NOTT

When this court entertains doubts as to the facts of a case, it must remand the cause for a new trial.

the rule relied on; we allude to that article which declares that commercial cases are governed by the laws peculiar to commerce.— This is emphatically such a one, being a transaction between two merchants in relation to a bill of exchange. What laws were referred to by the framers of our code by the expression just mentioned, has been often strenuously debated before this court, and we had occasion to express our opinion fully, in regard to it, in the case of *Barry vs. Louisiana Insurance Company* reported in 11 *Martin*, 493. The view then taken, we have seen no reason to change since. But it is unnecessary to enter into the question on general principles for the decisions in this court, on cases which cannot be distinguished from that now before us, render it unnecessary to do so. In the case of *Le Blanc vs. Laughlin et al;* we were of opinion that the expression *value received*, in a promissory note, did not prevent the maker in an action between him and payee from shewing that, in truth, no consideration had passed between them. The same point was again presented in the case of *Coupry's heirs vs. Dufau;* the doctrine on which it was decided, received our fullest attention; for it was most

elaborately discussed at the bar, and we felt it our duty to decide that cause upon the principle established in the first mentioned case. We are unable to perceive any difference between permitting one of the parties to contradict the positive expressions of the bill, and allowing him to shew that by an agreement the rights which the instrument conferred were modified and abridged. There is surely none, unless the latter case might be considered as not presenting so strongly as the former, a ground for the objection that parol testimony shall not be permitted to contradict that which is written, 12 *Martin*, 402, 1 *ibid. New Series*, 90.

But independently of this principle it might fairly be doubted whether the case came at all within any of the provisions of our law on this subject. The evidence offered, was neither to contradict nor explain a written instrument, but to prove a collateral fact, independent of the writing, namely that the bill was given for one purpose, and that it was used for another. The case of *Coupey's heirs vs. Dufau*, already referred to, presented this very feature, for there the party alleged and proved that the bill was delivered to the payee under a contract that he would not present the bill nor demand it until

a quantity of indigo, which the drawer under-took to ship to France, should arrive, but that contrary to his engagement he negotiated the draft and had it protested, *Martin's Reports, New Series, ibid.*

Being thus of opinion that the witness was properly admitted to give evidence, we proceed to state the substance of his testimony. He swears that the plaintiff, in the year 1819, shipped to the house of Breedlove, Bradford, and Robertson, about four hundred hogsheuds of Tobacco, that the article being of dull sale, at the time it was received, he applied to witnes, who is a partner in that house, to know if he had friends in Europe to whom it could be shipped. That the witness having been previously informed by the defendant that in case he had any correspondent, who wished to ship tobacco to Europe, liberal advances would be made and the consignment well managed, made application to him and stated that he wished an advance of five cents per pound, in cash, *and not in bills of exchange.* To this proposition the defendant acceded and after a conversation with the witness, respecting the rate of exhange at that time in England, it was agreed between them that the defendant

should be allowed four per cent on the advance made by him. At the time the property was going on board the vessel, the plaintiff, being in want of money, called on the defendant for part of the advance, and received from him then and in after payments, the amount agreed on. The invoice was made out purporting the tobacco to be for, and on account of the plaintiff, and on the witness handing the invoice and the bill of lading to the defendant, the latter requested witness to give bills of exchange on Samuel Williams, of London, to whom the property was consigned, for the amount of the advances made, as before stated. This was refused on the ground that they were by the agreement to be made in cash; upon which the defendant stated *that his only reason for wishing the bills drawn, was to conform to the rules of his house,* and that the tobacco was going to one of the first houses in London and would be well managed. The witness finally gave the bill of exchange. In addition to the four per cent, the defendant demanded two and a half per cent commission on the money advanced by him. This also was objected to, the witness stating that had he known such a charge would have been made, it would have

East'nDistrict.
*Feb.* 1824.

ROBERTSON
*vs.*
NOTT

been an insuperable bar to the shipment. The defendant replied that such w s the invariable rule of his house, and if the plaintiff did not choose to accede to these terms, he might return the money. Witness observed it was too late to give the shipment to an other house, as the tobacco was on board and the vessel cleared. The matter was finally arranged by agreeing to pay this charge. The first intimation that the house of Breedlove, Bradford and Bebertson, had of the draft given by them being negotiated, was a notification from the bank of the United States, stating that the bill was protested for non acceptance. On receiving this notice, the witness called on defendant and asked him if he had received information to the same effect, to which he replied that he had, and that he had satisfied Mr. Saul on the subject. The defendant appeared displeased at the conduct of Williams in noting the bill for non acceptance, and assured the witness the bill would be paid at maturity, for the honour of the house, Amory Callender, Nott & co. the endorsers, as in addition to the property in the hands of the drawee, they had a standing credit in the house for *l*10,000 sterling. The witness rested satisfied with this explanation,

but was subsequently notified by the bank, that the draft had been protested for non payment, for the sum of *l*1966, which they demanded, together with *l*407,7*l*, for damages and charges, making in the whole *l*2373,7-1 sterling. This amount the bank received from the house of Amory, Callender, Nott and co. and they being subrogated to the judgement in favor of the bank, received it from Breedlove, Bradford and Robertson.

In this evidence the judge of the first instance, saw nothing to take the case out of the general rule, and he accordingly gave judgement for the defendant. After a most attentive consideration of it, we feel constrained to say that it has produced a different impression on us. It is true we no where find it stated that the defendant expressly promised not to negotiate the draft, but the conclusion forced on our minds by the whole transaction is, that such was the understanding of the parties, and that, if it had been otherwise understood, the plaintiff's agent would not have drawn.— The original contract was that the defendant should make advances in New Orleans, on tobacco to be shipped to his friends in London. This certainly meant that the money paid here

East'nDistrict.
Feb. 1824.

ROBERTSON
vs.
NOTT

was to be replaced there. And a commission was allowed accordingly. After the parties had acted for some time on this agreement, the defendant requested drafts for the money, the consequence of giving which would have been that, if negotiated, the advances made would have been replaced here, and not where the property was sold, and that too, at the risk of the plaintiff. This was refused; upon which the defendant stated that his only reason for demanding them, was to conform with the rules of his house. What these rules were, we do not know; but it is quite probable the plaintiff understood by them something very different from negotiation, as he had just refused to give drafts in the ordinary way. The difficulty in deciding this case is, whether the expressions used by the defendant, taken with the other circumstances, are sufficiently strong to raise such a promise on his part, as will destroy the legal presumption arising from the plaintiff's drawing a bill in the usual form, in his favor and delivering it. Whether, in other words, the understanding between plaintiff's agent and defendant, was that the draft should not be negotiated. As this is a mere question of fact, had the judge who tried the cause been

East'nDistrict.
Feb. 1824.

ROBERTSON
vs.
NOTT

of opinion that it was, we should certainly have confirmed his judgment. But he thought differently, and although we cannot agree with him, we do not feel that we ought, without further investigation, give a different judgment on the merits, in opposition to the weight which is always attached in this tribunal to the decision of the inferior court, on matters of fact. The safest course which we can adopt is to remand the case, as we did that of *Bradford vs. Wilson*, 11 *Martin*, 188; which was similarly circumstanced, and in doing so, we think proper to suggest that the cause appears to us, one in which a correct estimation of the parteis rights would be greatly promoted by submitting it, in the tribunal below, to a jury of merchants.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court be annulled, avoided, and reversed, and it is further ordered, adjudged, and decreed that the case be remanded for a new trial, and that the appellee pay the costs of this appeal.

*Pierce* for the plaintiff, *Livingston* for the defendant.